UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| CLIFTON E. BELCHER, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Civil Action No. CV-95-S-1558-NE |
| FOB JAMES; RON JONES; and J.D. WHITE, | ) | |
| Defendants. | ) | |

**ENTERED**
JUL 15 1997

| | | |
|---|---|---|
| GARY L. COOLEY, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Civil Action No. CV-95-S-2429-NE |
| FOB JAMES; RON JONES; and J.D. WHITE, | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| FREDERICK DEAN HUGLEY, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Civil Action No. CV-95-S-2766-NE |
| FOB JAMES; RON JONES; and STEVE DEES, | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| BOBBY DEAN GAY, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Civil Action No. CV-95-S-2988-NE |
| FOB JAMES; RON JONES; and J.D. WHITE, | ) | |
| Defendants. | ) | |

42

JUL-21-1997 15:35        205 551 0741                    P.06

PHILLIP R. SHOWS,

    Plaintiff,

vs.

FOB JAMES; RON JONES; and
J.D. WHITE,

    Defendants.

Civil Action No. CV-95-S-3008-NE



ENTERED
JUL 18 1997

GERALD D. BROWN,

    Plaintiff,

vs.

FOB JAMES; RON JONES; and
J.D. WHITE,

    Defendants.

Civil Action No. CV-96-S-254-NE

## MEMORANDUM OPINION

This action is before the court on defendants' motions for summary judgment[1] and the report and recommendation of United States Magistrate Judge T. Michael Putnam, entered on April 10, 1997, recommending that defendants' motions be granted and these actions dismissed with prejudice. Plaintiff Clifton E. Belcher filed objections in Case No. CV 95-S-1558-NE on April 18, 1997.

Upon consideration of the pleadings and materials in each court file, this court concludes the record presently before this court is insufficient to warrant the dismissal of all of plaintiffs' claims. Accordingly, this action is allowed to proceed

---

[1] Defendants filed "special reports" in response to each plaintiff's claims, which the magistrate informed the parties would be construed as motions for summary judgment.

42

JUL-21-1997 15:31        USDC HUNTSVILLE        205 551 0741        P.006/013

on the claims that survive the order entered contemporaneously herewith.

The facts in this case are essentially undisputed. Yet, this court finds that several areas of inquiry must be more fully addressed by the parties. For example, the parties should more fully address the issue of whether female prisoners at Tutwiler are "similarly situated" to male prisoners at other Alabama institutions. Therefore, defendants are to amend their special reports on or before October 1, 1997, to more fully develop the record in this action. Factors to be more fully examined include prison population size, average length of sentence, security classification, type of crimes, and other special characteristics of male and female inmates. Also, this court directs that the following questions be answered: (1) what is the nature and extent of the farming or gardening operation "outside the wall" at Tutwiler (e.g., how many female prisoners work in that operation? do prisoners assigned to such farming or gardening operation stay in a separate facility? what are the security classifications and/or disciplinary status of the convicts assigned to such operation?); (2) how is that operation distinguishable from the farming operations at other facilities, such as Limestone and Staton; (3) have Tutwiler prisoners ever been required to pick up trash and clear brush along the interstate or other highways, or required to perform other duties that are similar to "chain gang" activities; (4) what is the average number of inmates at Tutwiler, Limestone, and Staton that qualify for "chain gang" status through both

3

security classification and disciplinary action; (5) what are the costs associated with operation of a "chain gang" unit, as compared to those of a regular work detail unit. In addition, this court directs counsel for defendants to fully expound on: (6) all differences in facilities at Tutwiler, Limestone, and Staton; and (7) any and all programing, administrative, or other problems caused by the fact that Tutwiler contains all security classifications of female inmates. Finally, this court directs defendants' counsel to submit a copy of the entire deposition of former Commissioner Ron Jones, portions of which have been provided this court.

## I. DISCUSSION

Each plaintiff has filed a *pro se* complaint requesting that defendants cease discriminating against them as male prisoners, by not requiring female prisoners to work on the "chain gangs." Each plaintiff seeks some form of monetary relief (e.g., plaintiffs Gay and Shows seek $5,000 for each day they spent on the "chain gang," plaintiff Hugley seeks the sum of $1,000,000). This court construes plaintiffs' complaints as presenting claims for injunctive and monetary relief under 42 U.S.C. § 1983 for violation of their equal protection rights under the Fourteenth Amendment. Plaintiffs have failed to allege whether defendants are sued in the official or individual capacities. Therefore, both aspects will be addressed.

4

### A.  § 1983 Official Capacity Claims

Defendants are not considered "persons" subject to suit under § 1983, when sued in their official capacity. That result flows from *Will v. Michigan Department of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989), where the Supreme Court held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." An understanding of the rationale undergirding the *Will* holding, and thereby of its application to this case, requires some discussion. To begin with, the Eleventh Amendment[2] bars suits against a state in a federal forum, "unless that State has waived its immunity, ... or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Will*, 491 U.S. at 66, 109 S.Ct. at 2309-10(citation omitted). The Court found "[t]hat Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance in that respect...." *Will*, 491 U.S. at 66, 109 S.Ct. at 2310.[3] In addition, suits against an official acting

---

[2] The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

[3] In addition to its discussion of the Eleventh Amendment's impact upon the scope of § 1983, the *Will* court found that

> Congress did not intend to override well-established immunities or defenses under the common law. ... The doctrine of sovereign immunity was a familiar doctrine at common law. The principle is elementary that a State cannot be sued in its own courts without its consent." ... We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent.

5

in his or her official capacity impose liability on the governmental entity the official represents. E.g., *Brandon v. Holt*, 469 U.S. 464, 471-72, 105 S.Ct. 873, 877-78, 83 L.Ed.2d 878 (1985). "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. ... As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71, 109 S.Ct. at 2312.

Governor Fob James is an executive officer of the state of Alabama.[4] Defendants Ron Jones (Commissioner), J.D. White (Deputy Commissioner), and Steve Dees (Warden of the Limestone Correctional Facility), are officials of the Alabama Department of Corrections. "Clearly the Department [of Corrections] is a state agency, and therefore its officials, the DOC Defendants, are protected by the Eleventh Amendment from suits seeking damages from Alabama's treasury." *Reeves v. Thigpen*, 879 F. Supp. 1153, 1178 (M.D. Ala. 1995), *aff'd*, 103 F.3d 147 (11th Cir. 1996). Therefore, to the

---

conclusion. ... Construing § 1983 as a remedy for "official violation of federally protected rights" does no more than confirm that the section is directed against state action — action "under color of" state law. *It does not suggest that the State itself was a person that Congress intended to subject to liability.*

*Will*, 491 U.S. at 67-68, 109 S.Ct. at 2310-11 (emphasis supplied)(citations omitted).

[4] Article V, § 112, Alabama Constitution (1901), provides: "The executive department shall consist of a governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries, and a sheriff for each county." (Emphasis supplied.)

6

extent plaintiffs seek monetary relief against defendants in their official capacities, those claims are dismissed.

On the other hand, the Supreme Court does not view the Eleventh Amendment as a bar to suits for prospective injunctive relief against state officials acting in their official capacity. *Parker v. Williams*, 862 F.2d 1471, 1475 (11th Cir. 1989)(citing *Edelman v. Jordan*, 415 U.S. 651, 664, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974)); see also *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10, 109 S.Ct. 2304, 2312 n.10, 105 L.Ed.2d 45 (1989)(holding that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State'"). Therefore, plaintiffs' § 1983 claim against defendants in their official capacities shall be allowed to proceed as to prospective injunctive relief.

**B.   § 1983 Individual Capacity Claims and Qualified Immunity**

Qualified immunity insulates governmental officials in their individual capacities from civil lawsuits, so long as the challenged discretionary conduct does not violate clearly established federal statutory or constitutional rights. *See Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Adams v. Poag*, 61 F.3d 1537 (11th Cir.), reh'g denied, 70 F.3d 1287 (11th Cir. 1995). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established

7

statutory or constitutional rights of which a reasonable person would have known." *Anderson v. Creighton*, 483 U.S. 635, 646, 107 S.Ct. 3034, 3042, 97 L.Ed.2d 523 (1987). Qualified immunity is intended to give officials the ability to anticipate when their conduct may give rise to liability for damages. *See Anderson*, 483 U.S. at 645, 107 S.Ct. at 3042 ("Where [the qualified immunity] rule is applicable, officials can know that they will not be held personally liable as long as their actions are reasonable in light of current American law").

The burden placed on a plaintiff opposing a qualified immunity defense is onerous. Plaintiffs do not satisfy their burden by simply alleging defendants violated some constitutional provision, and hence violated a constitutional right. Rather, the Supreme Court has established "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039.

> <u>A plaintiff must establish more than broad legal truisms</u>; he or she must demonstrate that the law fixed the contours of the right so clearly that a reasonable official would have understood his acts were unlawful. ... Thus, "pre-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d 1146, 1150 (11th Cir. 1994)(en banc). Moreover officials need not "be creative or imaginative in drawing analogies from previously decided cases.'" *Id*. at 1150. (citations omitted).

8

*Dolihite v. Maughon*, 74 F.3d 1027, 1040-41 (11th Cir.), *cert. denied*, ___ U.S. ___, 117 S.Ct. 185, 136 L.Ed.2d 123 (1996)(emphasis added).

Plaintiffs are unable to meet this onerous burden. The law, as it presently stands, has not clearly defined the right plaintiffs seek to enforce: that it is a violation of plaintiffs' equal protection rights to require them to work on a "chain gang" while not requiring female convicts to do the same. Thus, defendants are entitled to qualified immunity, because pre-existing case law does not "truly compel" the conclusion that defendants have violated federal law by placing male prisoners on "chain gangs," but not females.

## II.  CONCLUSION

An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this 18th day of July, 1997.

_____
United States District Judge

9